**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| GURAM MUKHIGULI,<br><br>Petitioner,<br><br>v.<br><br>MELISSA B. HARPER, New Orleans Field Office Director for ICE Enforcement and Removal Operations,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-cv-03149-TLP-atc |

**ORDER DENYING PETITIONER'S MOTION FOR AN AWARD OF FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT**

Petitioner petitioned for Writ of Habeas Corpus under 28 U.S.C. § 2241 on December 19, 2025. (ECF No. 1.) The Court granted his Petition on January 8, 2026. (ECF No. 10.) In April 2026, Petitioner moved for attorney fees and costs under the Equal Access to Justice Act ("EAJA"). (ECF No. 17) But Respondent showed its litigating position was "substantially justified." *See Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021). The Court therefore **DENIES** Petitioner's Motion.

## BACKGROUND

Petitioner is a Georgian asylum seeker who has resided in the United States since 2023. (ECF No. 1 at PageID 1.) U.S. Immigration and Customs Enforcement ("ICE") detained him while he was traveling to New York, and then held him without the possibility of bond. (*Id.* at PageID 1–2.) Respondent claimed to detain Petitioner under 8 U.S.C. § 1225(b)(2), which

requires "mandatory detention for arriving aliens who are seeking admission before an examining immigration officer at the border of a port of entry." (*Id.* (citation modified).)

Petitioner requests an award of $2,641.29, which includes $2,636.29 in fees and $5.00 in costs. (ECF No. 17 at PageID 101.) He argues that he should receive "fees and other expenses" under EAJA because his motion is timely, he is an eligible and prevailing party, Respondent's position was not "substantially justified," and no "special circumstances" make an award unjust. (*Id.* at PageID 103.) Respondent counters only that the Court should deny his Motion because its position was "substantially justified," even if the Court concluded that it was incorrect. (ECF No. 18 at PageID 135–36.)

## LEGAL STANDARD

The EAJA may require a court to "award to a prevailing party other than the United States fees and other expenses" that party incurred in certain civil actions "brought by or against the United States." *Griffith*, 987 F.3d at 563 (citing 28 U.S.C. § 2412(d)(1)(A)). But a court cannot award fees or other expenses if it "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* (citing 28 U.S.C. § 2412(d)(1)(A)). The government bears the burden of proving "substantial justification." *Id.*

A position is "substantially justified" if it is "justified in substance or in the main," which means a "reasonable person could think it correct," or it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (citation modified); *see id.* at 566 n.2. A position is not "substantially justified" just because it is "undeserving of sanctions for frivolousness"; but then again, a position need not be "correct" to be justified. *Id.* at 566 & n.2.

Of course, the Court may consider "objective indicia" of reasonableness, including a dissenting opinion, views of other courts, and "string[s]" of "losses" and "successes." *See*

*Griffith*, 987 F.3d at 563 (citation modified). But the "actual merits of the Government's litigating position" matter most. *Id.* (citation modified). So the Court must distinguish between cases where the government lost because it "vainly pressed a position flatly at odds with the controlling case law," and cases where it lost because an "unsettled question was resolved unfavorably." *Id.* at 564 (citation modified).

**ANALYSIS**

The crux of Petitioner's claim is that Respondent's position was not "substantially justified" because many federal courts had already rejected it. (ECF No. 17 at PageID 107–10.) But he sidesteps the proper inquiry: whether Respondent's position was "substantially justified" based on its "*actual merits*." *See Griffith*, 987 F.3d at 563 (emphasis added) (citation modified). Meanwhile, Respondent appropriately notes that a circuit judge's "thoughtful dissent, the fact that two district courts had agreed with the government," and "disagreement among jurists in similar cases around the country" may help show that a position is "substantially justified." (*See* ECF No. 18 at PageID 139–40 (citing *Griffith*, 987 F.3d at 565).)

So the Court begins with the "reasonableness" of Respondent's position. *See Griffith*, 987 F.3d at 565. A position is likelier to be reasonable if "there was no binding precedent" disfavoring the Government's position. *See id.* at 565–66 (citation modified). Of course, the Sixth Circuit had not decided *Lopez-Campos v. Raycraft* by the time Respondent argued that § 1225(b)(2)(A) governs Petitioner's detention. (*See, e.g.*, ECF No. 7 at PageID 43; *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).) Indeed, "district courts were divided on the issue," and no controlling precedent existed. *Valdez Lopez v. Raycraft*, No. 1:26-cv-68, 2026 WL 1800904, at *2 (S.D. Ohio June 23, 2026).

Moreover, the "governing norms" at the time did not "clearly . . . dictate a result in favor of the private litigant." *See Griffith*, 987 F.3d at 565–66 (citation modified). In *Jennings v. Rodriguez*, the Supreme Court noted that under § 1225, "an alien who 'arrives in the United States,' *or 'is present' in this country but 'has not been admitted*,' is treated as an 'applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (emphasis added) (citing 8 U.S.C. § 1225(a)(1)).

So the *Jennings* Court did not leave clear whether "noncitizens who have been residing in the interior of the country for a long time without inspection or authorization by an immigration office" are "applicant[s] for admission" under § 1225(b)(2)(A) or subject to detention under § 1226(a). *Compare Padilla-Ugsha v. Ladwig*, 819 F. Supp. 3d 827, 831–32, 836 (W.D. Tenn. 2025) (citation modified), *with Jennings*, 583 U.S. at 287–90. That alone could give a "reasonable person" pause. *See Pierce*, 487 U.S. at 565.

It is true that most district courts, including this Court, had rejected Respondent's position. *See, e.g.*, *Padilla-Ugsha*, 819 F. Supp. 3d at 834 n.2. But none of those decisions were binding on this Court or any other district court; and again, the Sixth Circuit had not yet addressed this issue. Even given the Sixth Circuit's decision, this "legal issue" is not just "likely to require resolution by the Supreme Court." *See Valdez Lopez*, 2026 WL 1800904, at *2 n.1. The Supreme Court has already granted the petition for writ of certiorari. *Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994, at *1 (U.S. Oct. 1, 2026).

In any case, Petitioner plays down a complex issue. So "despite the fact the Court strongly rejected" Respondent's "legal position," it "must hold" that Respondent was "substantially justified for purposes of the EAJA" in arguing that Petitioner could be detained

without a bond hearing. *See Godinez-Lopez v. Ladwig*, No. 2:25-cv-02962-SHL-atc, 2026 WL 2029736, at *1 (W.D. Tenn. July 13, 2026).

**SO ORDERED**, this 17th day of November, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE